The STATE ex rel. RACEWAY PARK, INC. et al.

v.

ERIE COUNTY BOARD OF ELECTIONS.

[Cite as *State ex rel. Raceway Park, Inc. v. Erie Cty. Bd. of Elections* (1998), 134 Ohio App.3d 534.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–98–025.

Decided Aug. 10, 1998.

*Jack M. Lenavitt* and *Joseph A. Battani,* for relators.

*Kevin J. Baxter,* Erie County Prosecuting Attorney, and *Gary A. Lickfelt,* Assistant Prosecuting Attorney, for respondent.

SHERCK, Judge.

Relators, Raceway Park, Inc. and S & S Properties, seek a writ of prohibition barring respondent, Erie County Board of Elections, from placing on the November 1998 general election ballot a referendum on an off-track Sandusky, Ohio betting facility.

This original action was submitted to us on the following agreed statements of fact:

"[T]he parties * * * hereby submit the following agreed statement of facts in this cause.

"1.   September 19, 1996, R.C. Section 3769.26 was revised allowing Ohio's horse race tracks to establish satellite facilities at which they could conduct pari-mutual wagering on horse races. Said section further provided that such satellite facilities could only be established with the approval of the appropriate local legislative authority wherein they were to be located.

"2.   That in 1997, Relator Raceway Park sought to establish a satellite facility at Relator's, S & S Property, Greentree Inn Complex, located at 1935 Cleveland Road, Sandusky, Ohio.

"3.   That in accordance with R.C. Section 3769.26, Raceway Park and George Sortino sought approval of said satellite facility from the Sandusky City Commission.

"4.   In response to said request from Relators, the Sandusky City Commission passed Resolution No. 057–97R which is attached hereto and marked Exhibit A.[1]

---

1.   In material part, this resolution provides:

"5. That in response to the Sandusky City Commission passing Resolution No. 057–97R, a referendum petition was filed with the City of Sandusky asking that the aforesaid resolution be submitted to the electors of the City of Sandusky for their approval or rejection at the general election to be held on the third day of November, 1998. * * *

"6. After submission of the referendum petitions to the Erie County Board of Elections, the Board of Elections determined that there were sufficient valid signatures on the petition to place said petition on the November 3, 1998, ballot.

"7. Relators filed several protests with the Erie County Board of Elections in regard to the placement of the referendum petition on the November 3, 1998, ballot. The Erie County Board of Elections held a hearing on March 20, 1998, and received information for and against the protest. At the end of said hearing, the Erie County Board of Elections voted three to one to deny the protest and place the referendum petition on the November 3, 1998, ballot.

"8. As a result of this action by the Respondent, Relators filed the action herein.

"9. That said referendum petition was prepared and presented to the Respondent pursuant to R.C. Section 731.29.

"10. That said referendum petition did not comply with the requirements of R.C. Section 3769.27.

"11. That the City of Sandusky is a Charter City.

"12. That Section 65 of the Sandusky City Charter states as follows: 'The provisions for the initiative and referendum in municipal corporations, now in force or hereafter enacted, as prescribed by the general laws of the state, shall govern.'

---

"BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF SANDUSKY, OHIO:
"Section 1. It is hereby found, determined, and declared to be necessary to and the Commission does hereby, in accordance with section 3769.26 of the Ohio Revised Code, approve the development and operation of an off track betting satellite facility at the Greentree Inn Complex at 1935 Cleveland Road in Sandusky, Ohio. This approval is for the operation of the facility at the site specified herein and any relocation of the facility shall be subject to further review and approval by the City Commission.
"Section 2. The development of the off track betting facility shall be completed in compliance with all applicable Federal, State and Local regulations.
"Section 3. It is further determined that the development of the satellite betting facility is part of an overall economic development plan; and
"Section 4. The City Commission hereby directs the City Manager and the Community Development Director to explore the availability of all applicable development tools and to work with S & S Investments to facilitate the development of a viable redevelopment project in the City's Downtown/Waterfront area * * *."

"13. Relators and Respondent acknowledge the language in the Sandusky City Charter."

On these facts, the parties agree that the following issues are determinative as to whether we should grant the writ:

"1. Did the people of Sandusky, by charter, reserve to themselves the power to approve or reject, by popular vote, an action of City Council approving by resolution the establishment of a satellite facility as authorized by R.C. Section 3769.26, regardless of whether such action was administrative or legislative in nature?

"2. Where the Sandusky City Commission, by resolution, approves the development and operation of a satellite facility at a specific site as part of an overall economic development package, after fully reviewing the merits and indicating that it's necessary for the City Commission to act to provide its approval as required by R.C. Section 3796.26, is such a resolution an administrative or legislative act?

"3. If the Sandusky City Commission's action is administrative, should the Erie County Board of Elections be prohibited from placing the referendum petition on the ballot?

"4. If the Sandusky City Commission's action is legislative, should the Erie County Board of Elections be allowed to place the referendum petition on the ballot?

"5. In the event it is determined that the action of the Sandusky City Commission approving a satellite facility is legislative, do the referendum petition requirements of R.C. Section 3769.27 or R.C. Section 731.29 govern?"

Section 1f, Article II of the Ohio Constitution grants initiative and referendum powers to the people of a municipality on questions upon which the municipality "may now or hereafter be authorized to control by legislative action." Until recently, the Ohio Supreme Court construed this phrase to exclude referenda on acts of a city council that were administrative only. *Myers v. Schiering* (1971), 27 Ohio St.2d 11, 56 O.O.2d 6, 271 N.E.2d 864, paragraphs one and two of the syllabus; see, also, *State ex rel. Srovnal v. Linton* (1976), 46 Ohio St.2d 207, 212, 75 O.O.2d 241, 244, 346 N.E.2d 764, 767.

Notwithstanding these cases, in May 1998, the Ohio Supreme Court held that a municipality could, by charter, reserve to itself the right of its people to challenge either the legislative or administrative acts of its city council by referendum. *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 81 Ohio St.3d 559, 692 N.E.2d 997, paragraph two of the syllabus. The references in the agreed statement of fact and item one in the issues presented reflect the

parties' efforts to fashion their facts and arguments in light of *Buckeye Community Hope*. However, after briefs were submitted and shortly before oral argument, the Supreme Court granted a motion for reconsideration in *Buckeye Community Hope* and reversed itself on this issue (1998), 82 Ohio St.3d 539, 697 N.E.2d 181. The court concluded that "actions taken by a municipal legislative body, whether by ordinance, resolution, or other means, that constitute administrative action, are not subject to referendum proceedings." *Id.* at paragraph two of the syllabus.

Consequently, the parties' first issue to be decided is moot.

At issue then is whether the Sandusky City Commission's approval of Resolution 057–97R was an administrative act or a legislative act.

■ Depending on the circumstances, an essentially legislative body may act in an administrative capacity. *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph two of the syllabus.

■ "The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Id.* at paragraph two of the syllabus; *Buckeye Community Hope, supra,* 82 Ohio St.3d at 544, 697 N.E.2d at 185.

■ When the action of a legislative body is an exercise of authority to grant or withhold approval of the local implementation of a state or federal statute, such action is administrative, not legislative. 5 McQuillin, Municipal Corporations (3 Ed.1996) 296–297, Section 16.55; see, *e.g., Barberis v. Bay Village* (1971), 31 Ohio Misc. 203, 204–205, 59 O.O.2d 366, 367–368, 281 N.E.2d 209, 210–211.

■ In this matter, although not dispositive, see *Myers v. Schiering, supra,* 27 Ohio St.2d at 14, 56 O.O.2d at 8, 271 N.E.2d at 866, we initially note that the city commission's approval of this measure by resolution rather than by ordinance tends to indicate that the commission did not believe this to be a legislative act. Also, we note that the commission specifically determined that its action was "in accordance with section 3769.26 of the Ohio Revised Code."

R.C. 3769.26 provides:

"(A)(1) * * * [E]ach track in existence on September 27, 1994, * * * may establish, with the approval of the state racing commission and the appropriate local legislative authority, not more than two satellite facilities at which it may conduct pari-mutuel wagering on horse races conducted either inside or outside this state and simulcast by a simulcast host to the satellite facilities.

"* * *

"(3)(a) Any track that desires to establish a satellite facility shall provide written notification of its intent to the state racing commission and to the appropriate local legislative authority that is required to approve the satellite facility, together with detailed plans and specifications for the satellite facility. The commission shall deliver copies of this notification to all other tracks in this state, and the commission shall, within forty-five days after receiving the notification, hold a hearing on the track's intent to establish a satellite facility. At this hearing the commission shall consider the evidence presented and determine whether the request for establishment of a satellite facility shall be approved."

More useful is the definition portion of this Act. Specifically, R.C. 3769.25(G) defines what is meant by local approval:

"(G) 'Approval of the appropriate local legislative authority' means the enactment of an ordinance or resolution by the legislative authority of the municipal corporation where a satellite facility is proposed to be located or, if a satellite facility is proposed to be located in an unincorporated area, by the board of township trustees of the township where the satellite facility is proposed to be located, that approves the location of the satellite facility in the municipal corporation or the unincorporated area. 'Approval of the appropriate local legislative authority' also means the failure of the legislative authority of a municipal corporation or the board of township trustees of a township to take a vote to enact an ordinance or resolution described in this division within sixty days after the ordinance or resolution is first introduced before the legislative authority or board."

■ As we have already noted, terms like "enactment," "ordinance" and "legislative authority" are not dispositive when analyzing whether action is legislative or administrative. Rather, careful scrutiny must be given to how local governmental approval fits into the legislative scheme. Here, the second portion of R.C. 3769.25(G) provides for automatic local governmental approval if the city commission fails to act within sixty days of the resolution's introduction. Simply put, if the local authority does nothing, the measure is, by statutory definition, approved.

■ Discretion is the hallmark of legislative action. R.C. 3769.25(G) removes that discretion by employing a self-executing administrative device if the city commission fails to act. For us to conclude that a city commission's role in this approval process is legislative rather than administrative, we would have to buy into the concept that a city may act in its legislative capacity by doing nothing. This we are unprepared to do. Therefore, we conclude that the local authority's approval is administrative in nature and not subject to referendum under R.C. 731.29.

Accordingly, a referendum on this matter is prohibited. Relators are entitled to their writ and the Erie County Board of Elections shall not place the referendum on the November 1998 general election ballot. The remainder of issues presented for decision are moot. Costs to respondent.

*Writ granted.*

HANDWORK, P.J., SHERCK and KNEPPER, JJ., concur.